**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GOVERNMENT EMPLOYEES
INSURANCE CO., GEICO
INDEMNITY CO., GEICO GENERAL
INSURANCE CO. and GEICO
CASUALTY CO.,

    Plaintiffs,

v.                                             Case No: 8:20-cv-0802-KKM-AAS

LUIS MERCED, M.D., et al.,

    Defendants.
_____/

## ORDER

This matter is before the Court on Defendants The Right Spinal Clinic, Inc., Yunied Mora-Jimenez, Victor Silva, M.D., Stephen Diamantides, D.C., Yulieta Perez Rodriguez L.M.T., Alexis Garcia-Gamez L.M.T., and Mignelis Veliz Sosa L.M.T.'s ("The Right Spinal Defendants") motion to dismiss Plaintiffs' amended complaint (Doc. 114); Plaintiffs' response in opposition to The Right Spinal Defendants' motion (Doc. 121); Defendant Kendrick Eugene Duldulao, M.D.'s motion to dismiss Plaintiffs' amended complaint (Doc. 155); and Plaintiffs' response in opposition to Duldulao's motion (Doc. 156). The Right Spinal Defendants and Duldulao (collectively "Defendants") argue that Plaintiffs have not satisfied Federal Rule of Civil Procedure 8(a)(2)'s pleading standard or Rule 9(b)'s heightened pleading standard and that the

1

amended complaint fails to state a claim under Rule 12(b)(6). *See* (Docs. 114 & 155). Plaintiffs argue that the allegations in their amended complaint are sufficient to meet all pleading requirements and that the amended complaint sufficiently states claims for relief. *See* (Docs. 121 & 156). The Court agrees and denies Defendants' motions to dismiss.

## I.     Background and Procedural History

On August 14, 2020, Plaintiffs filed an amended complaint, alleging ten counts of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. § 1962(c); five counts of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) under Section 501.201 *et seq.*, Florida Statutes; five counts of the Civil Remedies for Criminal Practices Act (Florida's civil RICO statute) under Section 772.101 *et seq.*, Florida Statutes; five counts of common law fraud; and five counts of unjust enrichment. Plaintiffs also seek a declaratory judgment against the Clinic Defendants under 28 U.S.C. §§ 2201 and 2202 of the Declaratory Judgment Act. (*Id.*).

In the amended complaint, Plaintiffs seek "to recover more than $3,100,00.00 that Defendants wrongfully obtained from [Plaintiffs] by submitting, and causing to be submitted, thousands of fraudulent no-fault . . . insurance charges . . . relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including putative initial examinations, follow up examinations, and physical therapy services . . . that purportedly were provided to Florida automobile accident victims ('Insureds') who were eligible for coverage under [Plaintiffs'] no-fault insurance

policies." (Doc. 99 at ¶ 1). Plaintiffs bring this action against five health care clinics ("Clinic Defendants"), which each "falsely purported to be properly-licensed [and to operate] in compliance with the licensing and operating requirements" under Florida law (*id.* at ¶ 4); the clinic owners ("Owner Defendants") (*id.*); clinic personnel, including doctors, licensed chiropractors, licensed massage therapists, and a physical therapist assistant, who all performed the allegedly fraudulent services (*id.* at ¶¶ 4, 33); and Defendant Luis Merced, M.D., who "falsely purported to serve as a medical director at each of the Clinic Defendants, and falsely purported to perform or directly supervise a massive amount of the Fraudulent Services on behalf of each of the Clinic Defendants," (*id.* at ¶ 4).

Under the Florida Motor Vehicle No-Fault Law, Sections §§ 627.730–627.7405, Florida Statutes, automobile insurers are required to provide personal injury protection ("PIP") benefits to insureds when they are injured in a motor vehicle accident. Fla. Stat. § 627.736(1). "In order for medical services to be eligible for PIP reimbursements under Florida's No-Fault Law, the performing medical clinic must comply with the Clinic Act, which requires medical clinics to appoint a medical director to accept legal responsibility for certain enumerated duties, including to 'conduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful,' to 'take immediate corrective action' upon discovery of an unlawful charge, and to 'ensure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided.'" *Gov't Emps. Ins. Co. v. Mas*, No. 19-21183-CIV-WILLIAMS,

2020 WL 9604436, at *1 (S.D. Fla. Mar. 31, 2020) (quoting Fla. Stat. § 400.9935). In their amended complaint, Plaintiffs allege that the Owner Defendants "could not operate the respective Clinic Defendants unless licensed physicians were employed as the Clinic Defendants' medical directors" in compliance with the Clinic Act, but if the "Clinic Defendants retained legitimate physicians to serve as the Clinic Defendants' medical directors, any such legitimate physicians . . . would be obligated to fulfill the statutory requirements applicable to a clinic medical director, which would impede the Defendants' interrelated [fraud] schemes." (Doc. 99 at ¶ 15). To solve that problem, Plaintiffs allege, the Clinic Defendants each retained Merced, "a licensed physician who was willing to falsely pose as the legitimate medical director." (*id.* at ¶ 16).

Plaintiffs allege that the Owner Defendants "used the façade of Merced's phony 'appointment' as the . . . Clinic Defendants' . . . 'medical director' to" illegally "operate health care clinics without legitimate medical directors"; "engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at the Clinic Defendants"; "permit health care services to be provided at the Clinic Defendants by individuals who lacked the proper licensure to perform the services"; and "use the Clinic Defendants as vehicles to submit a massive amount of fraudulent PIP billing to [Plaintiffs] and other insurers." (*Id.* at ¶ 28). Plaintiffs allege that Merced "unlawfully permitted the . . . Owner Defendants to dictate every aspect of the manner in which Insureds would be treated at the respective Clinic Defendants, and to dictate every aspect of the manner in which health care services at the respective Clinic Defendants

4

would be billed to [Plaintiffs] and other insurers, because [Merced] sought to continue profiting from the fraudulent billing submitted through the Clinic Defendants." (*Id.* at ¶ 30). Plaintiffs specifically allege that "[e]ach of the Defendants . . . billed for a limited range of Fraudulent Services, namely purported: (i) initial patient examinations; (ii) follow-up patient examinations; and (iii) physical therapy services." (*Id.* at ¶ 31). For example, Plaintiffs allege that in claims for initial examinations, Merced, the Clinic Defendants, the Clinic Owner Defendants, and three clinic personnel "routinely falsely represented that they provided either 'detailed' or 'comprehensive' physical examinations to the Insureds" in order to bill those examinations under particular codes that provide higher reimbursable rates than examinations that were not detailed or comprehensive. (*Id.* at ¶ 58).

## II. Discussion

### a. Failure to Meet Rule 9(b)'s Particularity Requirement

#### i. Rule 9(b) Legal Standard

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for allegations of fraud and provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This means where multiple defendants are involved, the complaint must contain sufficient, specific allegations with respect to each defendant rather than lumping all defendants together. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir.

5

2007). "In a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quotation marks and punctuation omitted).

### ii. Analysis

#### 1. The Failure to Distinguish between Defendants

In their motions to dismiss, Defendants explain that "[t]o satisfy Rule 9(b)'s particularity requirement, the plaintiff must allege specifically a fraudulent act by each defendant." (Doc. 114 at 5; Doc. 155 at 5). Defendants argue that Plaintiffs impermissibly "'lump together' several defendants and allege generally the defendants' participation in a fraudulent scheme," and that "[b]ecause the amended complaint lumps all of the defendants together, the complaint violates Rule 9(b)." (Doc. 114 at 5; Doc. 155 at 5). Defendants also argue that Plaintiffs "impermissibly join[] all defendants together under its First Cause of Action (Declaratory Judgment) after concluding, without allegations as to why, the clinic defendants are interrelated." (Doc. 114 at 6; Doc. 155 at 6). Plaintiffs deny that they have engaged in improper group pleading and argue that the amended complaint sufficiently distinguishes between defendants. (Doc. 121 at 4; Doc. 156 at 4). The Court agrees.

After review, the Court concludes that Plaintiffs' amended complaint does not impermissibly lump Defendants together and violate Rule 9(b). Contrary to Defendants' assertion, Plaintiffs have adequately alleged specific conduct sufficient to inform each Defendant of his or her individual role in the alleged scheme.

6

For example, the amended complaint alleges that the "Right Spinal [Clinic] . . . purported to be owned and controlled by Defendant Yunied Mora-Jimenez, falsely purported to have defendant Merced as its legitimate medical director, and was used as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by" The Right Spinal Defendants (specifically, Defendants Duldulao, Silva, Diamantides, Rodriguez, Garcia-Gamez, and Sosa). (Doc. 99 at ¶ 4(ii)). With respect to Defendant Mora-Jimenez, the amended complaint alleges that Mora-Jimenez was a clinic owner who retained an illegitimate medical director (*id.* at ¶¶ 4(ii), 15–16, 28), and falsely represented both the severity of insureds' problems in the clinic's billing and which physician purported to conduct certain examinations, *see, e.g.,* (*id.* at ¶¶ 53–55, 59, 67). Similar and additional allegations are made with respect to Defendant Silva in his capacity as a doctor, *see, e.g.,* (*id.* at ¶¶ 46–47, 53–59, 62); Defendant Diamantides in his capacity as a doctor of chiropractic, *see, e.g.,* (*id.* at ¶¶ 46–47, 53–59, 61, 65, 67–68, 75–79, 85); and Defendant Duldulao in his capacity as a doctor, *see e.g.,* (*id.* at ¶¶ 46–47, 53–59, 61–62, 65).

With respect to Defendant Rodriguez,[1] a licensed massage therapist, the amended complaint alleges that he "falsely represent[ed] . . . that Merced, a licensed physician, had either performed or supervised [his] putative physical therapy services"

---

[1] The amended complaint refers to Defendant Rodriguez as "Perez." (Doc. 99 at ¶ 4(ii)).

7

when in "reality, Merced neither performed nor supervised any of the physical therapy services that were billed through the . . . Clinic Defendants" to Plaintiffs—even though Defendants were aware that they "could not legally recover PIP Benefits for 'physical therapy' or any other kind of health care serves performed by unsupervised massage therapists," *see, e.g.*, (*id.* at ¶¶ 32–36, 42, 63, 91). The amended complaint makes similar allegations with respect to Defendant Garcia-Gamez,[2] a licensed massage therapist, *see, e.g.*, (*id.* at ¶¶ 32–36, 42, 63, 91), and Defendant Sosa,[3] also a licensed massage therapist, *see, e.g.*, (*id.* at ¶¶ 32–35, 42, 63, 91).

Although Plaintiffs list multiple defendants in certain allegations of the amended complaint, this does not negate that Plaintiffs have still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme.[4] *See Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 6:12-CV-1138-ORL-36DAB, 2014 WL 12617566, at *4 (M.D. Fla. Mar. 6, 2014). Throughout the amended complaint, each Defendant is referred to by name, or sometimes a collective group, depending on whether the defendant is a clinic, a clinic owner, or clinic personnel. *See*

---

[2] The amended complaint refers to Defendant Garcia-Gamez as "Garcia." (*Id.*).

[3] The amended complaint refers to Defendant Sosa as "Veliz." (*Id.*).

[4] Contrary to Defendants' argument that Plaintiffs "impermissibly join[ed] all defendants together under its First Cause of Action (Declaratory Judgment)" without explaining why (Doc. 114 at 6; Doc. 155 at 6), Plaintiffs seek a declaratory judgment against only the Clinic Defendants because Plaintiffs allege that the "Clinic Defendants have no right to receive payment for any pending bills submitted to [Plaintiffs] because they [were] unlawfully . . . operat[ing] in violation of the Clinic Act's medical director and operating requirements," (Doc. 99 at ¶ 99).

(Doc. 99). And specific allegations are made about each Defendant that are then referred to and used to support each claim made against that specific Defendant. *See* (*id.*). Accordingly, the amended complaint adequately informs each defendant of the nature of his participation in the alleged fraud. *See Ambrosia Coal & Constr. Co.*, 482 F.3d at 1317.

### 2. Failure to Meet Rule 9(b)'s Pleading Standard

Defendants argue that Plaintiffs have tried to circumvent Rule 9(b)'s pleading requirement by aggregating claims, rather than specifying how each Defendant allegedly engaged in fraudulent conduct with respect to each claim, which is required under Rule 9(b). (Doc. 114 at 6; Doc. 155 at 6). Defendants further argue that Plaintiffs must "specifically plead damages resulting from each fraudulent act," and that Plaintiffs' "amended complaint lacks any allegations of specific damage[s] relating to any specific fraudulent act." (Doc. 114 at 6; Doc. 155 at 6). Plaintiffs respond with Eleventh Circuit case law that they argue "is just a sample of the numerous, highly-analogous cases in which federal courts . . . have sustained similar anti-insurance fraud complaints." (Doc. 114 at 6–8; Doc. 155 at 6–8). With respect to damages, Plaintiffs argue that they pleaded "detailed facts to demonstrate why all [Defendants'] PIP billing was fraudulent, unlawful, and non-reimbursable" and thus Plaintiffs clearly allege "that its damages are based on the money that it paid pursuant to [Defendants'] fraudulent and unlawful PIP charges." (Doc. 114 at 6–8; Doc. 155 at 6–8) (emphasis removed). Once again, the Court agrees.

After review, the Court concludes that the amended complaint's allegations satisfy the heightened pleading requirements of Rule 9(b) for the reasons discussed above. This is a complex case involving numerous Defendants and claims that result in lengthy pleadings. Plaintiffs have set forth its allegations in numbered paragraphs, supporting each of its claims with the factual allegations in its 79-page complaint and approximately 1,200 pages of exhibits. *See* (Doc. 99). Accordingly, the Court finds that Plaintiffs have pleaded facts with sufficient specificity and informed each defendant of his or her contribution to the scheme so that each "of the Defendants is on fair notice of what it is they are alleged to have done for their part in carrying out the fraudulent scheme." *Mas*, No. 2020 WL 9604436, at *10–11 (explaining that to satisfy the requirements of Rule 9(b) at the pleading stage, a plaintiff "is required only to plausibly allege that each Defendant knowingly carried out their part in the alleged scheme" (quotation omitted)).

### b. Failure to State a Claim in the Amended Complaint

#### i. Rule 8(a)(2) and Rule 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

10

will not do.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### ii. Analysis

#### 1. Unjust Enrichment

Defendants contend that Plaintiffs' unjust enrichment claim is improper because "[u]nder Florida's PIP statutory scheme, the relationship between the insurer and the insured is contractual" and Defendants stand "in the shoes of the insured." (Doc. 114 at 7; Doc. 155 at 7). Defendants further argue that the "unjust enrichment claim is . . . improper" because Plaintiffs have an adequate remedy at law and "[u]njust enrichment is an equitable doctrine that only applies in the absence of a valid express or implied-

11

in-fact contract and a contractual relationship does exist between Plaintiffs and Defendants. (Doc. 114 at 7; Doc. 155 at 7). Plaintiffs respond that Defendants' argument has been repeatedly rejected by courts in other PIP fraud cases. (Doc. 121 at 11–12; Doc. 156 at 11).

"Florida courts have long recognized a cause of action for unjust enrichment 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" *State Farm Fire & Cas. Co. v. Silver Star Health And Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (quoting *Butler v. Trizec Props., Inc.*, 524 So.2d 710, 711 (2d DCA 1988)). "If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment." *Id.* Plaintiffs claim that Defendants were unjustly enriched because they accepted payments from Plaintiffs that Defendants were not entitled to under Florida law. *Id.*

Although Defendants argue that equitable remedies are not available under Florida law where adequate legal remedies exist, "that rule does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), rev'd in part on other grounds in *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014) (citing *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (5th Fla. Dist. Ct. App. 1998)). "It is only upon a showing that an express contract exists" between the parties that an unjust enrichment claim fails. *Id.* (quoting *Williams*, 725 So.2d at 400).

Accordingly, even if Plaintiffs have adequate legal remedies, those remedies do not bar their unjust enrichment claims at this point. *Id.* Moreover, to the extent that Defendants argue a contractual relationship exists between the parties, Defendants have failed to provide any proof of such a relationship. Other than generally claiming that Defendants "stand[ ] in the shoes of the insured" and that "a contractual relationship exists" between Plaintiffs and Defendants (Doc. 114 at 7; Doc. 155 at 7), Defendants have failed to provide any argument, authority, or support for its contention. In the absence of any express agreement between the parties and any explanation of how a contractual relationship exists between Plaintiffs and Defendants, the Court is unpersuaded by Defendants' argument and declines to dismiss Plaintiffs' unjust enrichment claims.

## 2. Declaratory Judgment

In their first cause of action in the amended complaint, Plaintiffs seek a declaratory judgment that the Clinic Defendants have no right to receive payment on any pending PIP bills. *See* (Doc. 99 at 30–31; Doc. 121 at 12; Doc. 156 at 12). Defendants argue that Plaintiffs' declaratory judgment count should fail because Plaintiffs "failed to allege any facts that would demonstrate a substantial likelihood that [Plaintiffs] would suffer an injury in the future." (Doc. 114 at 8; Doc. 155 at 8).

"To establish the existence of an actual controversy within the meaning of the Declaratory Judgment Act, the party invoking a federal court's authority must show: '(1) that they personally have suffered some actual or threatened injury as a result of the

13

alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision.'" *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 427 F. App'x 714, 721 (11th Cir. 2011), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014) (quotation omitted). "In Florida, insurers may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *Gov't Emps. Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, No. 18-20921-CIV, 2019 WL 1992930, at *7 (S.D. Fla. Apr. 19, 2019) (quotation omitted). "Courts find this remedy appropriate when an insurer seeks to be excused from making payments to a clinic that operates unlawfully." *Id.* (quotation omitted); *see Silver Star Health And Rehab*, 739 F.3d at 582.

With respect to Defendant Duldulao, Plaintiffs do not bring the declaratory judgment count against him,[5] and he therefore lacks standing to move to dismiss the claim. *See Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 429 F. Supp. 2d 1274, 1291 (M.D. Fla. 2005). With respect to The Right Spinal Defendants, Plaintiffs bring the declaratory judgment count against only The Right Spinal Clinic, Inc., making it the sole defendant in that group of defendants with standing to move for the dismissal of this claim. *See* (Docs. 99 & 114).

---

[5] Plaintiffs name only the Clinic Defendants in their declaratory judgment count. (Doc. 99 at 30).

Moreover, Plaintiffs may bring a declaratory judgment under the facts alleged. Plaintiffs point to caselaw that authorizes a declaratory judgment claim for outstanding bills for treatment alleged to be unlawfully provided and contend that they have met the requisite elements to seek a declaratory judgment claim because their amended complaint alleges a substantial controversy between parties. (Doc. 121 at 13–14). Namely, Plaintiffs allege that Defendants "submitted fraudulent PIP billing to [Defendants] that currently remains outstanding and unpaid, and seeks a declaration that it need not pay the billing because of the fraudulent activity alleged in the Complaint." (*Id.* at 13). Considering the live controversy between the parties—whether Plaintiffs are required to pay the still outstanding bills—and Eleventh Circuit precedent, the Court concludes that Defendants have not shown that Plaintiffs' pleading is inadequate and the Court declines to dismiss this claim. *See Silver Star Health And Rehab*, 739 F.3d at 582 (concluding that the insurer "was entitled to . . . obtain a declaratory judgment that it is not required to pay [the chiropractic clinic] the amount of the outstanding bills" where it alleged that the clinic did not "lawfully provide" treatment).

### 3. The Remaining Causes of Action

In a single paragraph, Defendants contend that Plaintiffs' "inability to properly allege fraud also contributes to their inability to state a RICO claim, a FDUTPA claim, and a common law fraud claim." (Doc. 114 at 9; Doc. 155 at 9; citations omitted). In a conclusory fashion, Defendants claim that Plaintiffs' allegations that The Right Spinal Clinic Defendants agreed to defraud Plaintiffs are unsupported by the amended

15

complaint's allegations and that none of the allegations in the amended complaint support a claim under Florida law or common law fraud. (Doc. 114 at 9; Doc. 155 at 9). But, as Plaintiffs point out, Defendants never attempt to explain how Plaintiffs' RICO, FDUPTA, Florida RICO, or common law fraud claims are deficient. In the absence of any such explanation from Defendants and considering the Court's conclusion that the amended complaint meets the Rule 8(a)(2) and Rule 9(b) pleading standards, the Court declines to dismiss Plaintiffs' RICO, FDUTPA, Florida RICO, and common law fraud claims.

### III.  Conclusion

The Court concludes that Plaintiffs meet the pleading requirements under the Federal Rules of Civil Procedure and sufficiently pleaded allegations to state claims for relief in their amended complaint.

Accordingly, it is **ORDERED**:

(1) Defendants' motions to dismiss (Docs. 114 & 155) are **DENIED**.

(2) By **July 16, 2021**, The Right Spinal Defendants and Defendant Duldulao must answer Plaintiffs' amended complaint.

**ORDERED** in Tampa, Florida, on June 14, 2021.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge