UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

      Plaintiffs,

v.                                Case No: 8:20-cv-0802-KKM-AAS

THE RIGHT SPINAL CLINIC,
INC., et al.,

      Defendants.

_____

## <u>ORDER</u>

GEICO hired Doctor Matthew Shatzer as an expert witness to opine about the irregularities in the medical bills submitted by Defendants to GEICO. As the Federal Rules of Civil Procedure require, Shatzer submitted a Report containing the opinions he intends to offer at trial. Defendants, a medical clinic and several of its doctors and employees, move to strike the Report and to exclude Shatzer's testimony at trial. Because Shatzer did not substantially participate in preparing the Report, the Court grants Defendants' motion.

## I.   BACKGROUND

GEICO sued the Right Spinal Clinic and numerous other Defendants for submitting fraudulent or unlawful billing under a Florida law that requires automobile insurers to reimburse their clients' medical expenses that arise from car accidents. To prove the claims, GEICO hired Shatzer to review the treatment and billing records that Right Spinal submitted to GEICO. (Doc. 280-1 at 2.) He spent approximately twenty hours reviewing these files. (Doc. 274-2 at 24.) Shatzer then discussed his findings "at length" with GEICO's counsel. (Doc. 280-1 at 3; Doc. 274-2 at 273–74.) Following their discussion, GEICO's counsel drafted the Report that was "based on the information [Shatzer] provided." (Doc. 280-1 at 3.) Though he did not write or dictate the Report, Shatzer maintains that the Report contains his opinions. (*Id.*)

At Shatzer's deposition, Defendants questioned Shatzer's involvement with the Report. (Doc. 274-2.) Shatzer explained that, though he neither drafted nor spent more than two hours reviewing the Report, he "still take[s] ownership" of it. (*Id.* at 24, 27–28.) He testified that the Report reflects his conclusions "put [into] their language." (*Id.* at 253.) In defense, Shatzer denied that he would sign a report that he did not agree with or one that the facts did not support. (*Id.* at 252.) Despite Shatzer's assurances, Defendants move to strike the Report and to exclude Shatzer from testifying at trial. (Doc. 274.) GEICO responds in opposition. (Doc. 280.)

2

## II.   LEGAL STANDARD

Rule 26(a) requires that a party disclose the opinions of an expert witness in "a written report" that is "prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B). A party that does not comply with Rule 26(a) "is not allowed to use that information or witness to supply evidence . . . , unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The proponent of the expert has a duty to comply with Rule 26 and the burden to show that a failure to do so is excusable under Rule 37. *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (per curiam).

## III.   ANALYSIS

Defendants move to strike the Report and to exclude Shatzer from testifying. Defendants argue that the Report does not comply with Rule 26 because Shatzer did not prepare it. They also argue that Shatzer is not qualified, that his methodology is unreliable, and that his testimony would not be helpful to the factfinder. Because the Court agrees that the Report violates Rule 26, it does not address Defendants' *Daubert*-related contentions.

### A. Rule 26's Preparation Requirement

Rule 26 requires that an expert witness submit "a written report" that is "prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B). What does it mean for a report to be "prepared . . . by the witness"? Caselaw and ordinary meaning lead to different answers.

Most courts to apply Rule 26 ask if the expert "substantially participate[d]" in preparing the report. *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 579 (W.D. Tenn. 2009). They reason that an attorney may assist and may "reduce an expert's oral opinion to writing." *United States v. Kalymon*, 541 F.3d 624, 638 (6th Cir. 2008). But he cannot be a ghostwriter; "preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report." *Manning v. Crockett*, No. 95-cv-3117, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999). Instead, the expert must be "substantially engaged in the report's creation and preparation." *Weissman v. Cheokas*, No. 1:17-cv-220, 2021 WL 5450460, at *2 (M.D. Ga. Sept. 30, 2021).

Separating assistance from ghostwriting is often fact intensive. *See Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942 (E.D. Mich. 2014). When the attorney drafts the report, courts ask if the expert met with the attorney beforehand, *see Tindall v. H & S Homes, LLC*, No. 5:10-cv-044, 2012 WL 3241885, at *2 (M.D. Ga. Aug. 7, 2012), how long the expert reviewed the draft before signing it, *see James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-cv-374, 2014 WL 1744848, at *6 (E.D. Ky. Apr. 30, 2014), and whether he edited or substantially changed the attorney's draft, *see Cambridge Univ. Press v. Becker*, No. 1:08-cv-1425, 2010 WL 6067575, at *4 (N.D. Ga. Sept. 21, 2010). Finally, courts compare the report to other documents that the

attorney has written to measure the expert's input. *See HVLPO2, LLC v. Oxygen Frog, LLC*, No. 4:16-cv-336, 2018 WL 2041370, at *3 (N.D. Fla. Jan. 16, 2018) (Walker, J.).

But Rule 26's requirement that the written report is "prepared and signed by the witness" likely requires more of an expert than substantial participation. FED. R. CIV. P. 26(a)(2)(B).

Look first at "prepare." To prepare means to "make or to get ready for use" or to "make ready or assemble" something. OXFORD DESK DICTIONARY AND THESAURUS 652 (Elizabeth J. Jewell ed., 2d Am. ed. 2002). "The term may also be used to mean 'draw up' or 'put into written form.'" *United States v. Hairston*, 46 F.3d 361, 376 (4th Cir. 1995) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1789–90 (3d ed. 1986)). This latter sense appears most apt, given that Rule 26 requires the witness to "prepare" a "*written* report." FED. R. CIV. P. 26(a)(2)(B) (emphasis added). Simple enough.

Turn now to "by." Dictionaries define by as "through the agency or means of." OXFORD DESK DICTIONARY 104. In other words, "[i]f something is done *by* a person or thing, that person or thing does it." *By*, COLLINS ENGLISH DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/by (last visited June 13, 2022); *see By*, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/dictionary/english/by (last visited June 13, 2022) (explaining that by is "used to show the

person or thing that does something"); *By*, ENGLISH DICTIONARY, https://www.lexico.com/en/definition/by (last visited June 13, 2022) (defining by as "[i]dentifying the agent performing an action" or "[i]dentifying the author of a text").

Applying these definitions to Rule 26's requirement that the written report is "prepared . . . by the witness" yields a straightforward result: the expert must be the one who makes the report or gets it ready for use. So, as in ordinary English, the phrase "prepared by" in Rule 26 requires that the expert had an exclusive or primary role in creating the report—a higher bar than substantial participation. But here the Report fails even the less stringent measuring rod found in the caselaw.

Shatzer's involvement in preparing the Report was minimal. He did not contribute a single word to the Report. (Doc. 274-2 at 263.) Nor did he participate in the drafting process with GEICO's counsel. (*Id.* at 27 ("I, myself, did not type it.").) Shatzer was so far removed from the drafting process that he does not know who wrote the Report. (*Id.*) An attorney may, of course, "help[] the expert draft a report in a way that satisfies the requirements of Rule 26," *Walmac Stud Mgmt.*, 2014 WL 1744848, at *6, or rephrase the expert's writing to reflect the appropriate legal terminology, *see Manning*, 1999 WL 342715, at *3. But GEICO's attorneys did not merely paraphrase or "legalize[]" Shatzer's words. *Oxygen Frog*, 2018 WL 2041370, at *3. They wrote the Report from beginning to end.

As GEICO observes, an attorney may compose a first draft of an expert report, if the expert provided prior, substantial input. *See Kalymon*, 541 F.3d at 638. But courts will "scrutinize the report more closely" in such situations. *Cambridge Univ. Press*, 2010 WL 6067575, at *4 n.1. In doing so, courts look to whether the attorney consulted the expert prior to drafting the report and whether the expert meaningfully contributed to subsequent drafts. *See id.* at 4; *Tindall*, 2012 WL 3241885, at *2.

Shatzer avers that he reviewed the relevant case files and discussed his findings with GEICO's attorneys "at length" before they drafted the Report. (Doc. 280-1 at 3.) Such prior involvement might suggest that the requisite "substantial participation" occurred. *Bekaert Corp.*, 256 F.R.D. at 579. But the record contradicts that timeline. The first draft of what would become the Report existed months before Shatzer reviewed and signed it. (Doc. 274-3 at 19; Doc. 274-1 at 20.) In fact, GEICO's attorneys filed that first draft in a different GEICO case—and filed it under the name of a different expert, James Dillard. (Doc. 274-3.) Beyond replacing the party names and adjusting the facts, the differences between the Shatzer and Dillard Reports are minor. (*See* Doc. 274-4 (comparing the Reports).) And the opinions are substantially identical. (*Compare* Doc. 274-3 at 2, *with* Doc. 274-1 at 1–2.) The similarity between the pre-consultation template and the Report indicates that GEICO's attorneys did not draft the Report *after* meeting with Shatzer; they merely revised the existing Dillard Report. *Cf. Tindall*, 2012 WL 3241885, at *2 (denying

7

a motion to strike because the expert provided "substantial input for the text of the report *before* counsel prepared a draft" (emphasis added)). It also shows that Shatzer's views made little difference to the opinions expressed in the Report.

Similarly, Shatzer's limited awareness of how important choices were made and who made them shows his minimal involvement. For example, Shatzer did not know why some example patients were highlighted in the Report and others were in an exhibit. (Doc. 274-2 at 196 ("I'm not certain why that happened that way.").) And while Shatzer mentioned some patients during his meeting with GEICO's attorneys, he admitted that he "most likely" did not identify or select the examples. (*Id.* at 198, 263.) Shatzer also did not know if he suggested the citations that supported the Report's opinions or if GEICO's attorneys suggested them. (*Id.* at 257.) That Shatzer did not participate in these choices and could not explain how they were made suggests that he did not substantially participate in preparing the Report. *Cf. Weissman*, 2021 WL 5450460, at *3 (reasoning that an attorney moves beyond legitimate assistance when he "independently" changes an expert's report).

Nor did Shatzer's participation increase after GEICO's counsel drafted the Report. Shatzer spent, at most, two hours reviewing the draft. *Cf. Walmac Stud Mgmt.*, 2014 WL 1744848, at *6 (striking a report because the expert "adopted 90%" of a draft report after reviewing it for between sixty and ninety minutes). There is no evidence that he edited the Report or altered it. *Cf. Cambridge Univ. Press*, 2010 WL 6067575, at *4 (concluding that

an expert substantially participated, in part, because he "edited and produced several versions of the report subsequent to the first draft"); *Tindall*, 2012 WL 3241885, at *2 (emphasizing that the expert "reviewed [the] draft and made multiple changes before it was put in final form"). Instead, Shatzer appears to have concurred with the Report as drafted by GEICO's attorneys and signed it as his own.

The Court does not doubt that Shatzer agrees with the Report and desires to adopt it. But Rule 26 requires more. An expert cannot merely adopt "counsel-provided information as his opinions." *Anders v. United States*, 307 F. Supp. 3d 1298, 1312–13 (M.D. Fla. 2018) (Antoon, J.). The greater step of adopting an attorney's opinions also goes beyond the bounds. *See Manning*, 1999 WL 342715, at *3. And the Report's similarity to other documents written by GEICO's counsel suggests that the Report primarily reflects their opinions, not Shatzer's. *See Oxygen Frog*, 2018 WL 2041370, at *3.

As discussed above, the Report bears a striking resemblance to a report GEICO submitted in a case in the Southern District of Florida. *See Gov't Emps. Ins. Co. v. Cereceda*, No. 19-cv-22206, 2021 WL 148738, at *3 (S.D. Fla. Jan. 15, 2021) (Goodman, Mag. J.); (Doc. 274-4). In that case, James Dillard signed a substantially similar report on December 28, 2020—four months before Shatzer signed the Report here. (Doc. 274-3 at 19; Doc. 274-1 at 20.)

Despite the different signatures at the bottom, much of the Report is identical to Dillard's. The headings and structure are the same. So are the typos in the second footnote. Much of what is not identical is very similar. Many of the sections, such as the ones on the standard of care and on follow-up examinations are almost entirely drawn from the Dillard Report. *See Numatics*, 66 F. Supp. 3d at 941 (noting the report contained "nearly indistinguishable" sections from a document counsel prepared months earlier). Most important, the opinions and conclusions are largely the same, using slightly different wording. (*Compare* Doc. 274-3 at 2 (opining that physical therapy services were unsupervised "in a significant number of cases"), *with* Doc. 274-1 (opining that the same services were unsupervised "in the substantial majority of cases").)

Likewise, other differences arise only from necessity. For example, the Dillard Report discusses how the clinic in that case referred patients for MRIs, injections, and surgeries. (Doc. 274-3 at 2.) GEICO's counsel cut these sections from the Report because Right Spinal did not offer those services. So too, the names of the defendants and the clinics changed.

The two differ most in that the Report discusses example patients in separate paragraphs, while the Dillard Report does not. One might think that these additions reflect Shatzer's contribution. Not so. Shatzer testified that he "most likely" did not select the example patients and he did not know why some were highlighted in the Report and others

were not. (Doc. 274-2 at 196, 198.) And even these "new" paragraphs are not as new as they seem; they are drawn almost word-for-word from the original complaint in this case. (*Compare* Doc. 274-1 at 9–10 (describing patient accidents and treatment plans), *with* Doc. 1 ¶ 470 (providing nearly identical descriptions)); *see Manning*, 1999 WL 342715, at *3 (rejecting the idea that Rule 26 allows an expert to "adopt[] the precise language alleged in a complaint").

The Reports are similar in another respect: they both draw from the same source. They borrow—without attribution—from a 2017 book that Max Gershenoff and Barry Levy wrote, entitled *No-Fault Insurance Anti-Fraud Litigation.* (Doc. 274-5 at 1.) Gershenoff and Levy are attorneys who frequently work for GEICO. (Doc. 223; Doc. 274-2 at 255.) Gershenoff also approached Shatzer to be an expert in this case. (Doc. 274-2 at 5.) And Shatzer has worked repeatedly with Gershenoff and Levy on similar cases. (*Id.* at 255.) The Report's use the book's description of soft-tissue injuries and an accompanying citation. (Doc. 274-5 at 3; Doc. 274-1 at 3–4; Doc. 274-2 at 256.)

Similarity—even of such a degree as this—might suggest that Shatzer reviewed the Dillard Report and *No-Fault Insurance* and decided to incorporate them rather than put the concepts into his own words. But that is not what happened. Shatzer testified that he had not read the Dillard Report; he did not even know who Dillard was. (Doc. 274-2 at 243–44.) Nor had Shatzer read *No-Fault Insurance*. (*Id.* at 255.) And he did not know

11

until his deposition that the Report that he signed—and the Report he claimed as his own—was so similar to that of another GEICO expert in a different case. (*Id.* at 241.)

That the Report borrows so heavily from sources that he has not read indicates that Shatzer did not contribute much to it. *See Walmac Stud Mgmt.*, 2014 WL 1744848, at *6 (noting that the expert report "heavily relie[d]" on documents that the expert did not read before submitting the report). It also "raise[s] questions as to *whose* opinions these actually are." *Tindall*, 2012 WL 3241885, at *2 (reasoning that an expert's affidavit that relies on sources he did not review suggests the resulting opinions are not his own). The "undeniable substantial similarities between [the expert's report] and the report of another expert prepared with assistance from the same counsel in an unrelated case" strongly signals that they are the opinions of GEICO's attorneys. *In re Jackson Nat. Life Ins. Co. Premium Litig.*, No. 96-md-1122, 2000 WL 33654070, at *1 (W.D. Mich. Feb. 8, 2000).

To sum up, Shatzer did not substantially participate, or otherwise "prepare," the Report. In the light of the "blatant signs of ghostwriting," *Oxygen Frog*, 2018 WL 2041370, at *5, GEICO's attorneys exceeded the level of assistance contemplated in Rule 26 as articulated in the caselaw and certainly beyond that which the plain text permits.

### B. Rule 37 Sanctions

Because Shatzer did not prepare the Report, GEICO does not satisfy the requirements of Rule 26(a). Rule 37 provides that GEICO "is not allowed to use [the

Report or Shatzer's testimony] to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1). GEICO bears the burden of showing that the error was justified or harmless. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017).

While contending that it complied with Rule 26(a), GEICO advances no argument that its actions were justified or harmless. This "lack of justification alone" permits exclusion under Rule 37. *Weissman*, 2021 WL 5450460, at *3. And even if it did not, GEICO's failure to comply with Rule 26 was neither justified nor harmless. GEICO's use of a template report with only minimal tailoring to this case and minimal involvement from its expert obscures the factual issues, requires Defendants to hire countering experts, and raises significant questions "as to *whose* opinions" the Report really contains—Shatzer's or GEICO's attorneys. *Tindall*, 2012 WL 3241885, at *3. As such, exclusion is the proper sanction.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Strike (Doc. 274) is **GRANTED**. The Court **STRIKES** Shatzer's Report and **EXCLUDES** Shatzer from testifying at trial.

**ORDERED** in Tampa, Florida, on June 14, 2022.

Kathryn Kimball Mizelle
United States District Judge