# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO. et al.,

     Plaintiffs,

v.                              Case No: 8:20-cv-0802-KKM-AAS

THE RIGHT SPINAL CLINIC,
INC. et al.,

     Defendants.

_____

## <u>ORDER</u>

The parties file cross motions for summary judgment. The dispute concerns Plaintiff GEICO's obligation to reimburse Defendant Right Spinal Clinic, Inc., under a Florida statute for services that Right Spinal provided to GEICO's insured clients. In that regard, Right Spinal was not entitled to reimbursement for physical therapy services, and Right Spinal must return funds that GEICO already paid for those services. GEICO is also entitled to a declaration that it is not obligated to pay outstanding bills for those same kinds of services. As for other services provided by Right Spinal to GEICO's insured clients, disputes of fact preclude summary judgment on whether GEICO was obligated to pay for them.

## I.    BACKGROUND[1]

Florida's Motor Vehicle No-Fault Law requires that automobile insurers compensate their insured clients for injuries sustained in car accidents. *See* §§ 627.730–627.7405, Fla. Stat. That compensation is called Personal Injury Protection (PIP) benefits. *See* § 627.736(1), Fla. Stat. An insured person may assign his right to seek PIP benefits from an insurer to his health care provider. *See* § 627.736(5). The provider may then submit claims directly to the insurance company. *See id.* The provider is entitled to PIP reimbursement only if it complies with the No-Fault Law.

In addition to the No-Fault Law, clinics that wish to receive PIP reimbursement must comply with the Clinic Act. *See* § 400.9935(1), (3), Fla. Stat. Among other demands, the Act requires that clinics hire a medical director to systematically review the clinic's billing and, if necessary, correct it. *See id.*

If a clinic is not entitled to PIP reimbursement under either statute, an insurer may refuse to pay the benefits or sue to recover benefits after paying. *See* § 627.736(4)(b), Fla. Stat.; *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665, 669–70 (11th Cir. 2014) (per curiam).

---

[1] The Court recounts the undisputed facts as contained in the record. To the extent facts are disputed or capable of multiple inferences, the Court construes the record in favor of the nonmovant. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020). Because the parties have filed cross motions for summary judgment, the Court views the facts in the light most favorable to the nonmoving party on each motion. *See James River Ins. Co. v. Ultratec Special Effects Inc*, 22 F.4th 1246, 1251 (11th Cir. 2022).

The Right Spinal Clinic, Inc., is a medical provider that caters to car accident victims. Right Spinal's services include initial examinations, follow-up examinations, and physical therapy treatments. (Doc. 277-1 at 4.) After providing these services to insured car accident victims, Right Spinal submits bills to GEICO and other Florida insurance companies for PIP reimbursement. (Doc. 275 at 2; Doc. 272-7 at 81.)

Right Spinal's billing represents that doctors Luis Merced, Kendrick Eugene Duldulao, Stephen Diamantides, and Victor Silva performed the initial and follow-up examinations. (Doc. 277-1 at 4–5.) In addition to patient examinations, Merced also served as Right Spinal's medical director under the Clinic Act from October 2017 to April 2021. (*Id.* at 3; Doc. 275 at 2.)

Three licensed massage therapists (LMTs)—Alexis Garcia-Gamez, Mignelis Veliz Sosa, and Yulieta Perez Rodriguez—provided Right Spinal's physical therapy services. (Doc. 277-1 at 6.) Although they held no other licensure (*id.*), these LMTs performed all the physical therapy services at Right Spinal from November 2017 through January 2020, (*Id.* at 12, 67, 199–200).

Right Spinal submitted its PIP billing to GEICO on HCFA-1500 forms. It submitted 60,518 of these forms for physical therapy services alone. (*Id.* at 9.) Those forms billed GEICO for services performed on 554 days between November 2017 and January 2020. (*Id.* at 8.) On over 99% of the forms Right Spinal represented that Merced personally

3

performed or directly supervised the underlying treatment. (*Id.* at 8–9, 63–64.) They did so despite the reality that Merced did not perform any physical therapy services as "[n]o doctor provide[d] therapy services," and he was not present at Right Spinal every day to directly supervise the LMTs. (*Id.* at 9, 65, 67–68, 87, 121–23.)

In reliance on Right Spinal's PIP billing, GEICO paid Right Spinal $2,015,882.52 between November 2017 and April 2020. (*Id.* at 13.) Of that amount, $690,251.44 was for physical therapy services. (*Id.* at 12–13.) In approximately April 2020, GEICO ceased paying Right Spinal's PIP bills. (Doc. 275 at 3.) Bills have accumulated since and remain outstanding. (Doc. 277-1 at 13.)

On April 7, 2020, GEICO[2] sued Right Spinal, its doctors (Merced, Duldulao, Diamantides, and Silva), its LMTs (Garcia-Gamez, Sosa, and Rodriguez), as well as its then-owner Yunied Mora-Jimenez. (Doc. 1.) GEICO later amended the complaint to add Lianny Jimenez-Urdanivia as a defendant after learning that she served as Right Spinal's manager from 2017 through February 2020. (Doc. 248; Doc. 249; Doc. 277-1 at 2.) GEICO alleges that these Defendants submitted fraudulent or unlawful billing in violation of the No-Fault Law and the Clinic Act.

---

[2] Plaintiffs include Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.

## II.    LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* FED R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of informing the court of the basis for its motion and identifying those parts of the record that show an absence of a genuine issue of fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When that burden is met, the burden shifts to the nonmovant to prove that there is a genuine issue of fact that precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings" and point to evidence of a real issue for trial. *Celotex*, 477 U.S. at 324 (quotation omitted). "A mere 'scintilla' of evidence" does not suffice; "there must be enough of a showing that the jury could reasonably find for [the nonmovant]." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quotation omitted). In reviewing the evidence, the Court draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

## III.   ANALYSIS

The parties file cross motions for summary judgment. GEICO seeks partial summary judgment, moving for judgment on less than all claims and against less than all Defendants. Meanwhile, all Defendants who are not in default (with the exception of Jimenez-Urdanivia) request judgment on GEICO's claims. The Court addresses the motions separately.

### A. GEICO's Motion for Partial Summary Judgment

GEICO moves for summary judgment against Right Spinal, Jimenez-Urdanivia, Mora-Jimenez, and Garcia-Gamez on GEICO's claims for unjust enrichment (Count VII), declaratory judgment (Count I), and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count IV). (Doc. 278.)

### 1.   GEICO's Unjust Enrichment Claim (Count VII)

To succeed on its unjust enrichment claim, GEICO must show (1) that it conferred a benefit on Defendants; (2) that Defendants "voluntarily accepted and retained that benefit;" and (3) that it would be inequitable for Defendants to retain the benefit under the circumstances. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

GEICO easily satisfies the first two elements. GEICO paid Right Spinal $2,015,882.52 between November 2017 and April 2020 in reliance on the legitimacy of its

PIP charges. Defendants accepted and retained that money. (Doc. 277-1 at 13.) GEICO satisfies the third element if it shows that Right Spinal was not entitled to receive the payments. *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). GEICO argues that the No-Fault Law and the Clinic Act erect four independent barriers to Right Spinal's receipt of PIP benefits. Defendants claim they hurdle each one. If there is at least one barrier to Right Spinal's entitlement to PIP benefits, then GEICO satisfies all three elements of its unjust enrichment claim and is entitled to summary judgment on Count VII.

### i.   The No-Fault Law's Limitations on Massage Therapists

Does the No-Fault Law prohibit reimbursement for physical therapy services that LMTs perform? If it does, GEICO was not required to pay Right Spinal's physical therapy PIP charges—$690,251.44—because it is undisputed that LMTs provided all Right Spinal's physical therapy services. (Doc. 277-1 at 73.) But if the No-Fault Law allows for such billing, then GEICO must find another basis on which to deny payment. The statute prohibits billing for an LMT's services, thus GEICO is entitled to summary judgment on the unjust enrichment claim as it relates to physical therapy services.

The No-Fault Law requires insurers pay for medical benefits. *See* § 627.736(1). But not all medical treatment qualifies as a medical benefit and not all medical benefits are reimbursable. First, medical benefits "do not include massage therapy." § 627.736(1)(a)(5),

Fla. Stat. Second, "a licensed massage therapist . . . may not be reimbursed for medical benefits under this section." *Id.*[3] In other words, the statute "excludes massage from the types of health care services that are eligible for PIP reimbursement" and it "prohibits massage therapists from receiving PIP reimbursement." *Geico Gen. Ins. Co. v. Beacon Healthcare Ctr. Inc.*, 298 So. 3d 1235, 1238 (Fla. 3d DCA 2020).

The latter exclusion is determinative. It is undisputed that LMTs performed all the physical therapy services that Right Spinal billed to GEICO. The No-Fault Law "flatly precludes reimbursement for LMTs providing advanced physical therapy services." *See State Farm Mut. Auto. Ins. Co. v. Muse*, No. 20-13319, 2022 WL 413417, at *6 (11th Cir. Feb. 10, 2022) (per curiam). And so, Right Spinal's services are not reimbursable. *See S. Owners Ins. Co. v. Hendrickson*, 299 So. 3d 524, 525 (Fla. 5th DCA 2020) (concluding that the statute "explicitly prohibits" an LMT "from being reimbursed for medical benefits").

Defendants doubt that Florida law would completely exclude LMTs from the PIP regime. But it does. And it does so "explicitly" and by its "plain text." *See id.* at 525–26.

---

[3] Section 627.736(1)(a)(5) thus clearly circumscribes what insurers must reimburse for services provided by licensed message therapists:

> Medical benefits do not include massage therapy as defined in s. 480.033 or acupuncture as defined in s. 457.102, regardless of the person, entity, or licensee providing massage therapy or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for medical benefits under this section.

The "statute excludes licensed massage therapists from being reimbursed for medical benefits." *Id.* at 525; *accord McCarty v. Myers*, 125 So. 3d 333, 335 (Fla. 1st DCA 2013) ("[T]he law specifically excludes licensed massage therapists and licensed acupuncturists from being reimbursed for medical benefits.").

Defendants persist, arguing for an unstated exception. They posit that an LMT's physical therapy services are reimbursable if a licensed physician supervised them. But Defendants cite no authority for a supervision exception. For that reason alone, their argument fails. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to consider arguments made without supporting legal authority).

Though Defendants do not say so, perhaps they meant to invoke a provision of the No-Fault Law providing that reimbursable medical benefits include care that is "lawfully provided, *supervised*, ordered, or prescribed by a licensed physician under chapter 458." § 627.736(1)(a)(1), Fla. Stat. (emphasis added). Even if Defendants had cited this provision, it would not have helped them establish a supervision exception.

Look first at the No-Fault Law's structure. Subsection (a) defines the scope of reimbursable medical benefits. In paragraphs (1) and (2), it explains that "medical benefits" include initial and follow-up care that a physician lawfully provides or supervises. Paragraph (5) limits this definition in two ways. First, it excludes massage therapy from the definition of medical benefits. Second, it excludes LMTs from receiving

reimbursement "for medical benefits under this section." In other words, paragraph (5) limits the broad definition of compensable medical benefits in paragraph (1).

That structure shows Defendants have the statute backwards. A doctor's supervision is not an exception to the rule prohibiting LMT reimbursement; the prohibition on LMT reimbursement is an exception to the rule that doctor-supervised care is reimbursable. Thus, even if doctor-supervised care is usually a qualifying medical benefit, it is not reimbursable if the supervised provider is an LMT. In other words, "Florida's No-Fault Law precludes reimbursement for physical therapy services provided by massage therapists without regard to the level of supervision." *Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, No. 21-10297, 2021 WL 5157535, at *4 (11th Cir. Nov. 5, 2021) (per curiam). That alone conclusively forecloses Defendants' argument on this score.

Look next at the constraints subparagraphs (1) and (2) place on supervised care. *See* § 627.736(1)(a), Fla. Stat. Under those paragraphs, care that is "lawfully" supervised "by a physician licensed under chapter 458" is reimbursable. § 627.736(1)(a)(1), Fla. Stat. So too, the No-Fault Law explains elsewhere that an insurer is not required to pay for any "treatment that was not lawful." § 627.736(5)(b), Fla. Stat. Lawfulness requires "substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." § 627.732(11), Fla. Stat.

For their supervision exception to work then, Defendants would have to show that it was lawful for "a physician licensed under chapter 458" to delegate physical therapy services to a massage therapist. Florida law makes that showing a challenge—and it is a challenge that Defendants do not attempt.

First, Florida's Physical Therapy Act generally limits the practice of physical therapy to licensed physical therapists. *See* § 486.028, Fla. Stat.; *Beacon*, 298 So. 3d at 1238. It is undisputed that Right Spinal's services constituted physical therapy and that no employee held a physical therapy license. And Defendants never argue that the services were merely incidental to a licensed doctor's practice of his profession. *See* § 486.161(1), Fla. Stat. *Cf. State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. of S. Fla., Inc.*, 881 So. 2d 557, 560 (Fla. 3d DCA 2004) (concluding that the physical therapy modalities at issue were incidental to a physician's practice).

Second, Florida law limits a doctor's ability to delegate duties. For example, doctors may delegate some tasks to a registered nurse, a licensed physician's assistant, or a medical assistant. *See* § 458.303(2), Fla. Stat.; § 458.347(4)(d), (h), Fla. Stat.; § 458.3485, Fla. Stat. Defendants do not argue that Right Spinal's LMTs were qualified for those positions. And Defendants cite no case, statute, or regulation suggesting that a doctor could legally delegate physical therapy services to LMTs.

In sum, the No-Fault Law denies PIP reimbursement for services that an LMT provides. Defendants' arguments to the contrary are unsupported and unconvincing. Because Right Spinal was not entitled to PIP reimbursement for its physical therapy treatments, GEICO is entitled to summary judgment on its unjust enrichment claim for the $690,251.44 it paid for those services.

### ii.  The Clinic Act's Medical Director Requirement

Florida's Clinic Act requires that clinics like Right Spinal "appoint a medical director" to "accept legal responsibility" for the clinic. § 400.9935(1), Fla. Stat. The medical director must perform "systematic reviews of clinic billing to ensure that the billings are not fraudulent or unlawful." § 400.9935(1)(g), Fla. Stat. He must also "take immediate corrective action" if he discovers an unlawful charge. *Id.*

"A clinic's failure to comply with the Clinic Act's [medical director] requirements carries significant consequences." *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1328 (11th Cir. 2016). The Act provides that a "charge or reimbursement claim made by or on behalf of a clinic" that is "operating in violation of this part . . . is an unlawful charge and is noncompensable and unenforceable." § 400.9935(3), Fla. Stat. In other words, if GEICO shows that Right Spinal operated in violation of the Clinic Act, then it is "entitled to recover the amounts it paid" on a theory of unjust enrichment. *Vizcay*, 826 F.3d at 1330.

GEICO contends that Merced was not systematically reviewing Right Spinal's billing. And so, GEICO concludes, Right Spinal operated in violation of the Clinic Act and is not entitled to PIP reimbursement. Defendants disagree, arguing that they are entitled to summary judgment because Merced conducted adequate reviews. There is evidence to support both parties. Because weighing that evidence is the jury's task, summary judgment is inappropriate.

Merced, a doctor in his eighties, served as the medical director for at least four clinics and as a treating physician for several others. (Doc. 277-1 at 105–13.) On a monthly basis, he reviewed between five and ten patient files at Right Spinal. (*Id.* at 101.) During that review, he would go through the patient's entire file. (*Id.*) One of Merced's monthly review sheets shows that he reviewed the files of seven patients and identified one that was in error. (Doc. 272-5.) While Merced served as medical director, Right Spinal billed an average of 109 physical therapy services each day. (Doc. 277-1 at 8.) Defendants assert— without citation—that Right Spinal saw between nineteen and eighty-nine patients a month. (Doc. 272 at 12.)

GEICO questioned Merced on his duties as medical director at his deposition. At that time, Merced could not remember the CPT codes that Right Spinal used for its billing or the guidelines for selecting them. (Doc. 277-1 at 129–31, 133.) Nor did he recall if he had received training on how to select or evaluate CPT codes. (*Id.* at 130.) Although he

reviewed them for years, Merced also testified that he did not know what information clinics were required to put in their billing forms. (*Id.* at 100.)

GEICO argues that the size of Merced's monthly review and his inability to remember the basics of PIP billing are clear evidence that Merced did not perform his medical director duties. How, GEICO asks, could Merced have systematically reviewed Right Spinal's billing if he did not know how to complete the forms? Or how many patients Right Spinal saw each month? Fair questions. And ones Defendants try to answer. They explain that Merced suffered an injury several months before his deposition that impaired his memory and recall. (Doc. 272 at 19 n.3; Doc. 208 at 3–4.) Defendants claim that any "fair reading of the transcript" shows that Merced's memory was impaired. As it is essentially a dispute over credibility, the Court may not draw inferences from Merced's inability to remember. Resolving such disputes is the factfinder's task. *See Sconiers*, 946 F.3d at 1263 (explaining that a court cannot grant summary judgment when credibility is material).

For the same reason, the Court will not infer from Merced's age, competing obligations, or his failure to identify billing errors that he was a sham medical director. Doing so would require the Court to disregard Merced's testimony, as well as the review sheet exemplifying Merced's behavior. It cannot do that. Nor may the Court weigh the evidence or draw inferences against the nonmovant. *See id.* at 1263. Of course, a jury might

14

not find Merced's schedule credible. But a jury might also weigh the evidence and find that Merced's reviews were systematic. *Cf. Vizcay*, 826 F.3d at 1332 (concluding that there was sufficient evidence for the jury to find that a medical director's reviews were not systematic). But the Court is "not at liberty to pick [the] side [it] think[s] is more credible." *Sconiers*, 946 F.3d at 1263.

### iii. The No-Fault Law's Requirement that Treatments Are Not Medically Unnecessary or Upcoded

The No-Fault Law limits medical benefits to "medically necessary" treatment. § 627.736(1)(a), Fla. Stat. A medically necessary treatment is one that a "prudent physician" would use to treat an injury and that fits with "generally accepted standards of medical practice;" is of appropriate type, frequency, and duration; and that is not primarily for the convenience of the patient or health care provider. § 627.732(2), Fla. Stat. Unnecessary treatments are not entitled to PIP reimbursement. *See* § 627.736(1)(a), Fla. Stat.

The No-Fault Law also prohibits exaggerating the extent of the service provided, a practice known as "upcoding." *See* § 627.736(5)(b). Upcoding occurs when a provider uses a billing code that "result[s] in payment greater in amount than would be paid using a billing code that accurately describes the services performed." § 627.732(14), Fla. Stat. Clinics like Right Spinal report the treatment they provide using "current procedural

15

terminology" (CPT) codes. The No-Fault Law incorporates sources on selecting proper codes. *See* § 627.736(5)(d), Fla. Stat.

GEICO argues that Right Spinal violated both rules. First, GEICO contends that the treatments were medically unnecessary because Right Spinal's patients "received a substantially similar physical therapy treatment plan." (Doc. 277-1 at 8.)[4] This similarity, GEICO argues, proves that treatments were not tailored to individuals, but rather were predetermined. Right Spinal's expert Daniel Bowerman disagrees. He points to variation in treatments and the number of patient visits to show that Right Spinal did not use a prescribed, inflexible plan. (Doc. 272-18 at 3–5.) He also points out that similarity might reflect good treatment: "If something works for a condition, it would be prudent to prescribe what works." (*Id.* at 9.)

GEICO next argues that Right Spinal upcoded its bills, systematically using codes that inflated its services to receive additional PIP reimbursement. GEICO cites Bowerman for support. Bowerman acknowledges that some of Right Spinal's billing was "[p]robably either inflated or inadequately documented. (Doc. 277-1 at 160; Doc. 272-18 at 14.) Either way, such billing is at least technically "improper" under standard coding principles. (Doc.

---

[4] GEICO primarily relies on Michael Shatzer's Expert Report for evidence on medical necessity and upcoding. Because the Court granted Defendants' motion to exclude Shatzer's Report and his testimony, (Doc. 291), the Court does not consider this evidence.

277-1 at 162.) At his deposition, Bowerman also identified one of Right Spinal's initial evaluations as improperly coded. (*Id.* at 163–64.)

Right Spinal counters with the rest of Bowerman's report. While Right Spinal's use of some codes appeared "deficient," Bowman claimed that "these could also be argued as being in substantial compliance." (Doc. 272-18 at 14–15.) He explained at his deposition that the deficiencies he noted may be simple failures to document the extent of services, rather than deliberate inflations. (Doc. 277-1 at 161–62.)

Viewing the evidence in the light most favorable to the nonmovant, the Court denies GEICO's motion for summary judgment on these issues. A reasonable jury could agree with either party's interpretation of Right Spinal's billing practices.

### iv. The No-Fault Law's Requirement for Box 31 of the HCFA-1500 Form

A clinic is not entitled to PIP benefits if it violates the rules for submitting PIP billing. *See* § 627.736(5)(d), Fla. Stat. One such rule requires that clinics "properly complete[]" the HCFA-1500 billing form. § 627.736(5)(b), (d). A form is properly completed when it provides "truthful, substantially complete, and substantially accurate responses as to all material elements to each applicable request for information or statement." § 627.732(13), Fla. Stat.

GEICO argues that Right Spinal's billing violated these rules because Box 31 of its HCFA-1500 forms contained false information. Box 31 must list "the name of the

individual who either personally performed or directly supervised" the treatment billed. *See Beacon*, 298 So. 3d at 1237 n.2 (citing the Medicare Claims Processing Manual's instructions for completing Box 31 of the CMS-1500 form as controlling under the No-Fault Law). To directly supervise, a doctor must be physically present at the facility. *See* 42 C.F.R. § 410.32(b)(3)(ii) (defining direct supervision for CMS-1500 billing forms); *see also* § 627.736(5)(d), Fla. Stat. (incorporating the instructions for the CMS-1500 form).

Nearly all Right Spinal's 60,518 HCFA-1500 forms for physical therapy services listed Merced's name in Box 31. (Doc. 277-1 at 8–9.) It is undisputed that Merced did not perform any of those services himself and that he was not always present at Right Spinal to directly supervise. (*Id.* at 9, 65, 67–68, 73, 121–23.) And yet, by listing Merced's name in Box 31, Right Spinal represented to GEICO that Merced either performed the service or was present to directly supervise it.

Right Spinal was not entitled to PIP reimbursement if falsely listing Merced's name in Box 31 was a "material element[ of a] request for information or statement." § 627.732(13), Fla. Stat.[5] Predictably, the parties dispute whether inserting Merced's name was a material error. Resolving that dispute is a task for the jury.

---

[5] Even if the statement was not material, Right Spinal would not be entitled to PIP reimbursement if it knowingly submitted a false or misleading statement on its HCFA-1500 forms. *See* § 627.736(5)(b), (d), Fla. Stat.; *see also* § 627.732(10), Fla. Stat. (defining knowingly to include "actual knowledge," "deliberate ignorance," and "reckless disregard"). The Court does not address this avenue further because GEICO does not expressly argue that the errors in Box 31 were made knowingly and because a defendant's knowledge and state of mind are usually issues for the finder of fact.

Under Florida law, materiality is a question of fact for a jury to decide. *See Silverman v. Pitterman*, 574 So. 2d 275, 276 (Fla. 3d DCA 1991) (collecting cases showing that materiality of a negligent misrepresentation, of a modification of an offer to contract, and of a relationship with an attorney are all reserved for the jury). For that reason, it is "an error for [a] trial court to direct a verdict and not submit the issue to the jury." *Lopes v. Allstate Indem. Co.*, 873 So. 2d 344, 347 (Fla. 3d DCA 2004). Although the No-Fault Law does not define material, Florida courts have held that materiality is a decision for the jury when an insured misrepresents information to an insurer. *See Haiman v. Fed. Ins. Co.*, 798 So. 2d 811, 811 (Fla. 4th DCA 2001); *Anchor Prop. & Cas. Ins. Co. v. Trif*, 322 So. 3d 663, 672 (Fla. 4th DCA 2021). Though both parties move for summary judgment, neither addresses the longstanding rule that "materiality of a misrepresentation is a question for the jury." *Id.*; *see also Hauben v. Harmon*, 605 F.2d 920, 924 (5th Cir. 1979). Nor do they argue that the No-Fault Law changes the rule or that Florida courts do not apply it to the No-Fault Law. In the absence of authority to the contrary, the Court declines to remove materiality from the jury's province.

Applying the general rule and leaving materiality to a jury makes sense given the facts and law at issue here. Start with the facts. The parties disagree on whether having the correct information in Box 31 would have mattered to GEICO in this case. Defendants argue that any error in Box 31 was immaterial because, even if Merced was not on site,

another doctor was present to directly supervise the treatment. Swapping one doctor's name for another, Defendants posit, is not important because it does not change GEICO's obligation to pay for the underlying treatment.

GEICO counters that knowing the name of the physician who performed or directly supervised the treatment is "obviously" material. (Doc. 281 at 20.) While conclusory, there is something to that position. Knowing who performed or supervised the treatment would allow GEICO to ensure the provider was licensed. If a search revealed that he was not, GEICO could deny payment. *See* § 627.736(5)(d), Fla. Stat. (requiring that all billed services are performed by persons with "the valid licenses required to perform such services"). Accurate information in Box 31 would also help GEICO analyze treatment patterns, making it easier to see if a provider was systematically over billing or upcoding treatments.

In short, Defendants and GEICO disagree on whether accurate information in Box 31 would have altered GEICO's behavior. But whether a reasonable insurance company would attach importance to a mispresented fact is a question for the jury. *See Trif*, 322 So. 3d at 671–72.

Turn now to the law. The parties cite no authority that compels or allows the Court to decide as a matter of law that an error in Box 31 of a HCFA-1500 form is material. Neither party offers a test to determine materiality under the No-Fault Law. Nor do they

cite controlling authority on materiality. For their part, Defendants do not cite any caselaw to support their position. GEICO does little better. The cases GEICO cites are not on point because they either exclusively concern misrepresentations other than Box 31 or concern misrepresentations in addition to Box 31. *See State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1060 (S.D. Fla. 2020) (Scola, J.) (concluding that misrepresentations as to the necessity and lawfulness of claims were material), *rev'd in part on other grounds*, 2022 WL 413417 (11th Cir. Feb. 10, 2022); *Quality Diagnostic Health Care, Inc.*, 2021 WL 5157535, at *3 (considering the materiality of defendants' false statements cumulatively). Thus, GEICO cites no support for its argument that an error in Box 31 is material on its own.

In sum, given the parties' dispute over whether correct information in Box 31 of a HCFA-1500 form mattered to GEICO, their failure to identify controlling authority or to address Florida law, and the general rule in Florida that materiality is a question of fact for a jury, the Court denies GEICO's motion for summary judgment on this issue.

### v.   The Conclusion to GEICO's Unjust Enrichment Claim

While disputes of fact bar summary judgment on three of GEICO's arguments that Right Spinal was not entitled to PIP reimbursement, GEICO succeeds on one. The No-Fault Law precludes reimbursement for services that LMTs provide. It is undisputed that LMTs performed all Right Spinal's physical therapy services and that GEICO paid

$690,251.44 for those services. (Doc. 277-1 at 12, 73.) Accordingly, Defendants were not legally entitled to receive those payments and allowing them to retain the money would be inequitable. *See Silver Star Health & Rehab*, 739 F.3d at 584 ("If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment."); *accord State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1312 (M.D. Fla. 2014) (Kovachevich, J.). The Court grants GEICO's motion for summary judgment on Count VII, but only as to the $690,251.44 it paid for physical therapy services. Disputes of fact preclude summary judgment on whether Right Spinal was entitled to the remaining $1,325,631.08 GEICO paid Right Spinal.

### 2. GEICO's Declaratory Judgment Claim (Count I)

"In a case of actual controversy," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To satisfy Article III's standing requirement, a plaintiff seeking declaratory relief must show a "substantial continuing controversy between two adverse parties" and a "substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–47 (11th Cir. 1999); *see also GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995). An insurer makes that showing

when it argues that it is not obligated to pay outstanding PIP bills. *See Silver Star Health & Rehab*, 739 F.3d at 584.

GEICO makes that showing. There is an "actual controversy" between GEICO and Defendants because Right Spinal submitted PIP billing to GEICO that remains outstanding. (Doc. 277-1 at 13.) There is a "substantial likelihood" that GEICO will suffer future injury because Right Spinal may pursue collection of these bills. (*Id.* at 13.)

GEICO also shows that it is entitled to summary judgment on its declaratory judgment claim. Under the No-Fault Law, Right Spinal is not entitled to PIP reimbursement for services that its LMTs provided. Accordingly, GEICO is not obligated to pay outstanding PIP bills that are based on services that Right Spinal's LMTs provided. And GEICO is entitled "to obtain a declaratory judgment that it is not required to pay [Right Spinal] for [those] outstanding bills." *Vizcay*, 826 F.3d at 1330.

But GEICO asks for more. It seeks a declaratory judgment that it need not pay any of Right Spinal's outstanding bills, even for treatments not provided by massage therapists. For support, GEICO looks to cases positing that a single unlawful PIP bill may void all of a clinic's billing. (Doc. 278 at 29; Doc. 284 at 13–14). But these cases all concern false or fraudulent statements that a clinic submitted knowingly. *See, e.g., Quality Diagnostic Health Care, Inc.*, 2021 WL 5157535, at *2; *Silver Star Health & Rehab*, 739 F.3d at 582–84. While some evidence suggests that Right Spinal's employees may have known the bills

23

were false or misleading, disputes of fact preclude summary judgment on what they knew. Because GEICO provides no other reason to extend it, the Court limits the declaratory relief to Right Spinal's bills for an LMT's services.

### 3. GEICO's FDUTPA Claim (Count IV)

To establish a FDUTPA claim, GEICO must show (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). An insurer is entitled to summary judgment on its FDUTPA claim when it paid PIP bills to a clinic that violated the No-Fault Law or the Clinic Act. *See State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, 232 F. Supp. 3d 1257, 1268 (S.D. Fla. 2017) (Gayles, J.) (collecting cases).

GEICO makes that showing. Defendants engaged in deceptive or unfair practices by violating the No-Fault Law and submitting PIP bills that GEICO had "the statutory right to deny." *Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care Inc.*, No. 18-cv-20101, 2019 WL 11687706, at *8 (S.D. Fla. Dec. 20, 2019) (Martinez, J.), *aff'd*, 2021 WL 5157535 (11th Cir. Nov. 5, 2021). Specifically, Right Spinal submitted PIP bills for services that LMTs performed, while representing that Merced performed or directly supervised every treatment. And yet, such bills are not entitled to PIP reimbursement and Defendants admit that Merced was not always present to directly supervise treatments as its billing represents. *See id.* at *9 (reasoning that an insurer succeeded on its FDUTPA

claim where the clinic billed a masseuse's services and falsely represented that a doctor had performed or directly supervised the services); (Doc. 277-1 at 68). By submitting facially valid bills, Defendants caused GEICO to believe that it was obligated to pay them. *See Harrison v. Lee Auto Holdings, Inc.*, 295 So. 3d 857, 862 (Fla. 1st DCA 2020) (reasoning that a representation or practice is deceptive if it is "likely to mislead the consumer acting reasonably in the circumstances" (quotation omitted)). And Defendants' practice harmed GEICO because it paid Right Spinal for services that LMTs performed. Accordingly, the Court grants GEICO's motion for summary judgment on Count IV, but only as to Right Spinal's physical therapy billing.

### B. Defendants' Motion for Summary Judgment

Defendants Right Spinal, Mora-Jimenez, Garcia-Gamez, Duldulao, Silva, Diamantides, Rodriguez, and Sosa move for summary judgment on all GEICO's claims against them and on their anti-SLAPP claim. (Doc. 272.)

#### 1. GEICO's Causes of Action

Defendants moves for summary judgment against GEICO "as to all claims." (Doc. 272 at 2.) Defendants' motion must be denied on Counts I, IV, and VII because Right Spinal was not entitled to PIP reimbursement for services that its LMTs provided. As to the remaining Counts, disputes of material fact preclude summary judgment on whether Right Spinal's practices and bills complied with the No-Fault Law and the Clinic Act.

Defendants also abandoned their request for summary judgment because their motion does not identify the elements of GEICO's claims, cite authority discussing those claims, or apply the facts to those claims. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding that a party "abandons" a position "when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"). Because "the onus is upon the parties to formulate arguments" at summary judgment and Defendants fail to do so, their motion is denied. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

## 2. Defendants' Anti-SLAPP Claim

Florida's Anti-SLAPP Statute prohibits a person from suing another "without merit and primarily because such person has exercised the constitutional right of free speech." § 768.295(3), Fla. Stat. (defining "SLAPP" as a "Strategic Lawsuit[] Against Public Participation"). A defendant in a SLAPP suit may file a motion for summary judgment. *See* § 768.295(4). An anti-SLAPP claim fails if the plaintiff initiated the suit for a proper purpose or if the suit is meritorious. *See* § 768.295(3); *see also Mastandrea v. Snow*, 333 So. 3d 326, 327 (Fla. 1st DCA 2022) (per curiam).

Defendants argue that GEICO's claims violate Florida's Anti-SLAPP Statute. According to Defendants, GEICO began this lawsuit to deter them from filing suits in

state court over GEICO's failure to pay outstanding PIP charges. GEICO disputes Defendants' characterization of its motives.

Regardless, Defendants' anti-SLAPP claim fails because GEICO's case is not without merit. Instead, GEICO is entitled to summary judgment on Counts I, IV, and VII. Because at least some of GEICO's claims are meritorious, Defendants' Anti-SLAPP claim is denied. *See Mastandrea*, 333 So. 3d at 327 (noting that the lawsuit must be without merit for the statute to apply); *see also Grippa v. Rubin*, No. 4:20-cv-457, 2021 WL 5033817, at *5 (N.D. Fla. Feb. 22, 2021) (Walker, C.J.) (denying an anti-SLAPP claim because the lawsuit was meritorious); *Pierre-Paul v. ESPN Inc.*, No. 16-cv-21156, 2016 WL 4530884, at *2 (S.D. Fla. Aug. 29, 2016) (Cooke, J.) (same).

As the prevailing party on the anti-SLAPP claim, GEICO is entitled to the attorney's fees and costs that it accrued in connection with Defendants' invocation of Florida's Anti-SLAPP Statute. *See* § 768.295(4), Fla. Stat.; *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1322 (S.D. Fla. 2020) (Martinez, J.) (explaining that the statute "entitles" the prevailing party to fees and costs).[6]

---

[6] Neither party argues that Florida's Anti-SLAPP statute does not apply in federal court. For that reason, the Court does not reconsider its decision that the statute applies in federal court. *See Gov't Emps. Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950, 2021 WL 4391717, at *5 (M.D. Fla. Sept. 24, 2021) (Mizelle, J.); *see also Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (Ruiz, J.) (reaching the same conclusion); *Bongino*, 477 F. Supp. 3d at 1322–23 (same).

## IV.    CONCLUSION

For the reasons stated above, the following is **ORDERED:**

1.      GEICO's Motion for Summary Judgment (Doc. 278) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

        a. The Court **GRANTS** judgment in GEICO's favor and against The Right Spinal Clinic, Inc., Lianny Jimenez-Urdanivia, Yunied Mora-Jimenez, and Alexis Garcia-Gamez on Counts I, IV, and VII, but only to the extent that those Counts are based on physical therapy services.

        b. The Court **DECLARES** that GEICO is not obligated to pay Right Spinal for outstanding PIP bills that were performed by massage therapists.

2.      Defendant's Motion for Summary Judgment (Doc. 272) is **DENIED**.

        a. GEICO is **ENTITLED** to the reasonable attorney's fees and costs that it incurred responding to Defendants' anti-SLAPP claim.

        b. GEICO must file a motion seeking the determination of these fees and costs within forty-five days of this order. *See* Local Rule 7.01(c).

3.    Defendants are **DIRECTED** to move for entry of final judgment in accord

with this order **within seven days** of the conclusion of a jury verdict or any

other final resolution of this case.

**ORDERED** in Tampa, Florida, on July 6, 2022.

Kathryn Kimball Mizelle
United States District Judge